Judgment rendered June 30, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,966-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

FRANK JAURON                                Appellant
STRINGFELLOW


* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 72771

Honorable Bruce E. Hampton, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By:  Paula C. Marx

FRANK JAURON STRINGFELLOW            Pro Se

JOHN F. K. BELTON                    Counsel for Appellee
District Attorney

LEWIS ALLEN JONES
KYWONNA DRAKE
Assistant District Attorneys

* * * * *

Before PITMAN, GARRETT, and COX, JJ.

**GARRETT, J.**

The defendant, Frank Jauron Stringfellow, was convicted of second degree murder, attempted second degree murder, and illegal use of weapons or dangerous instrumentalities. He was sentenced to, respectively, life imprisonment at hard labor, 50 years at hard labor, and two years at hard labor. All sentences were to be served consecutively and without benefit of probation, parole, or suspension of sentence. As to the attempted second degree murder conviction, the defendant has raised on appeal a claim pursuant to *Ramos v. Louisiana*, 590 U.S. —, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020), which we find has merit. Accordingly, the defendant's conviction and sentence for attempted second degree murder are vacated, and the matter is remanded to the trial court for a new trial. The defendant's convictions and sentences for second degree murder and illegal use of weapons or dangerous instrumentalities are affirmed.

## FACTS

Shakena Hampton and her five children lived in a house in Ruston with her mother, Doris Hampton. The defendant was the father of three of Shakena's children. However, her 13-year-old daughter, Destiney, and one-year-old son, Isaiah, were not the defendant's children.

On August 22, 2017, the defendant argued with Shakena at her home. He shot her six times; she died at the scene. Isaiah, who was in his mother's arms when she was shot, was struck in the back by a bullet but survived. The defendant shot Doris in the right arm three times; she recovered from her injuries. According to the testimony of Destiney and her 16-year-old half-brother, Frank Hampton, the defendant pointed the gun at Destiney and

tried to shoot her also. However, they testified that the gun did not fire but made clicking sounds. The defendant fled the house.

The defendant was charged by bill of indictment with second degree murder in Shakena's death and two counts of attempted second degree murder as to Doris and Destiney. He was also charged with illegal use of weapons or dangerous instrumentalities.

The matter came up for trial in October 2019. During jury selection, counsel for the defendant began questioning potential jurors about the issue of intoxication. However, the defense had not given the state notice of its intent to use a defense of intoxication. The state objected to this line of questioning. The trial court ruled that the defendant was precluded from asserting the affirmative defense of voluntary intoxication and that no jury instruction would be given as to that defense. The defendant filed an emergency writ with this court. On the showing made, we denied the writ, as well as the defendant's request for a stay.

The jury unanimously convicted the defendant on the charges of second degree murder and illegal use of weapons or dangerous instrumentalities. He was convicted of the attempted second degree murder of Doris by a vote of 11 to 1. As to the charge of attempted second degree murder pertaining to Destiney, the jury voted not guilty.

On appeal, the defendant asserts that, pursuant to the *Ramos* ruling, he is entitled to have his conviction and sentence for attempted second degree murder vacated and the matter remanded to the trial court for a new trial. In a *pro se* brief, in addition to the *Ramos* issue, the defendant further contends that the trial court erred in refusing to allow him to present an intoxication defense.

2

## *RAMOS* ISSUE

The only issue raised in the brief filed by the defendant's appellate counsel is whether the defendant is entitled to have his conviction for attempted second degree murder vacated pursuant to *Ramos*, *supra*. The state requests that this court rule in accordance with the controlling law and jurisprudence.

In the *Ramos* decision, the United States Supreme Court held that the right to a jury trial under the Sixth Amendment to the U.S. Constitution, incorporated against the states by way of the Fourteenth Amendment to the U.S. Constitution, requires a unanimous verdict to convict a defendant of a serious offense. The *Ramos* court further indicated that its ruling may require retrial of those defendants convicted of felonies by non-unanimous verdicts whose cases are still pending on direct appeal. *Ramos*, 140 S. Ct. at 1406. [1] The Louisiana Supreme Court subsequently determined that the holding of *Ramos* applied to cases pending on direct review when *Ramos* was decided. *State v. Richardson*, 2020-00175 (La. 6/3/20), 296 So. 3d 1050. If the non-unanimous jury claim was not preserved for review in the trial court or was abandoned during any stage of the proceedings, the court of appeal should, nonetheless, consider the issue as part of its error patent review. *State v. Corn*, 2019-01892 (La. 6/3/20), 296 So. 3d 1043. Thus, the State of Louisiana will have to retry defendants who were convicted of serious offenses by non-unanimous juries and whose cases were still

---

[1] On May 17, 2021, after the conclusion of briefing in the instant case, the United States Supreme Court handed down its decision in *Edwards v. Vannoy*, 141 S. Ct. 1547 (2021), wherein it held that the *Ramos* jury-unanimity rule does not apply retroactively on federal collateral review. However, states remain free, if they choose, to retroactively apply the jury-unanimity rule as a matter of state law in state post-conviction proceedings. 141 S. Ct. at 1559.

3

pending on direct appeal when *Ramos* was decided. *State v. Ardison*, 52,739 (La. App. 2 Cir. 3/31/21), — So. 3d —, 2021 WL 1201808.

The verdict on the attempted second degree murder charge pertaining to Doris Hampton was not unanimous, and the matter was on direct appeal when *Ramos* was decided. Even if the issue was not preserved by the defendant for appellate review, this error is patent on the face of the record. *State v. Sullivan*, 53,797 (La. App. 2 Cir. 5/5/21), — So. 3d —, 2021 WL 1773703. Consequently, we hereby vacate the defendant's conviction and sentence for attempted second degree murder. The case is remanded to the trial court for further proceedings.[2]

## INTOXICATION DEFENSE

In his *pro se* brief, the defendant once again raised the issue of the intoxication defense. Because it potentially affects the defendant's conviction for second degree murder, we will address it.

Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime. La. R.S. 14:15(2). Second degree murder can be a specific intent crime or a felony-murder crime under La.

---

[2] In his *pro se* brief, the defendant appears to make a more expansive argument that all of his convictions should be vacated. First, he contends that, while the record states that the jury votes on two of his convictions (second degree murder and illegal use of weapons) were "unanimous," it might not mean the count was 12-0 because the jury instructions allowed a verdict of only 10 jurors in agreement. However, our review of the polling slips, which were included in the appellate record as exhibits, reveals that all of the jurors agreed with the verdicts on those two offenses.

Second, the defendant appears to argue that the use of a jury instruction allowing for non-unanimous verdicts at his trial was structural error requiring a new trial on all of the offenses, a concern raised in Justice Alito's *Ramos* dissent, 140 S. Ct. at 1436. However, this argument, which was mentioned in the a*micus curiae* brief submitted by the State of Oregon in *Ramos*, is not currently supported by the jurisprudence, including *Ramos*. *See State v. Anthony*, 17-372 (La. App. 5 Cir. 12/30/20), 309 So. 3d 912.

4

R.S. 14:30.1. *State v. Gay*, 36,357 (La. App. 2 Cir. 10/23/02), 830 So. 2d 356; *State v. Davies*, 35,783 (La. App. 2 Cir. 4/5/02), 813 So. 2d 1262, *writ denied*, 2002-1564 (La. 5/9/03), 843 So. 2d 389. Here, the state argued that it was a specific intent crime because Shakena was shot six times.

If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention, and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate. La. C. Cr. P. art. 726(A). Upon a failure to provide the required notice, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition. La. C. Cr. P. art. 726(B). For purposes of La. C. Cr. P. art. 726, intoxication is an "other condition" bearing on the issue of whether the defendant had the mental state for the offense charged. See *State v. Trahan*, 576 So. 2d 1 (La. 1990).[3]

During voir dire, defense counsel began asking prospective jurors whether they drank and about the effects of drinking. The prosecutor

---

[3] In *Trahan*, *supra*, the Louisiana Supreme Court affirmed the trial court's decision to exclude the results of a blood alcohol test on the defendant which were contained in the state's crime lab report. The supreme court found that the trial court properly exercised its discretion under La. C. Cr. P. art. 726 and excluded the evidence from the defendant's second degree murder trial. It explained that the defendant's failure to give the state the required notice under La. C. Cr. P. art. 726 prevented the state from preparing expert testimony to explain the blood alcohol levels and place them into proper perspective. The supreme court held that the defendant's constitutional right to present relevant evidence was not impaired by this ruling because there was ample evidence in the record to support his claim that he had been drinking.

interrupted and asked to approach the bench. The trial judge called a recess, informing the prospective jurors that a legal matter needed to be resolved. After adjourning to another courtroom, the judge heard arguments from both sides outside the presence of any potential jurors. The prosecutor recited the requirement under La. C. Cr. P. art. 726 that notice be given to the state no later than ten days prior to trial if intoxication was going to be used as a defense. In support of its position, the state cited the *Trahan* case and *State v. Sullivan*, 49,183 (La. App. 2 Cir. 8/13/14), 146 So. 3d 952.[4] Defense counsel agreed that notice was not filed but asserted that the state was placed on notice that the defendant was intoxicated on the night of the incident by the statements of Shakena's children and Doris to the police. However, defense counsel stated he had no expert witness or lab reports to provide to the state; he indicated that he merely intended to cross-examine the state's witnesses about the defendant's intoxication. He further maintained that taking away the intoxication defense would take away the defendant's right to defend himself.

The trial court ruled in favor of the state. It cited the *Trahan* and *Sullivan* cases in support of its decision to preclude the defendant from asserting the affirmative defense of involuntary intoxication and not entertain a request for a jury instruction as to that defense. However, the

---

[4] In *Sullivan*, *supra*, the defendant was charged with aggravated second degree battery, a specific intent crime. Because the defendant failed to give the state adequate notice, the trial court ruled that he would be prohibited from asserting the defense of intoxication or requesting a jury instruction regarding intoxication. The trial court noted that the defendant's intoxicated condition would come out in testimony, but the defense could not argue that intoxication precluded the specific intent required for the crime. During voir dire, the trial court allowed defense counsel to question prospective jurors regarding their feelings about those who become intoxicated. The appellate court found that the trial court properly refused to (1) allow defendant to assert the defense of voluntary intoxication and (2) give jury instructions on that defense.

6

trial court stated that it would not exclude all questions regarding intoxication. It stated that it was not ruling against the defense asking prospective jurors if hearing something about the defendant drinking would prejudice them against him. Also, the trial court stated that, if the state's witnesses indicated anything regarding intoxication, defense counsel would be able to question them about the defendant's actions and appearance and "even smell."

The defendant sought supervisory review of the trial court's ruling. On the showing made, this court denied the writ, citing the *Trahan* and *Sullivan* cases, and denied the defendant's request for a stay. *State v. Stringfellow*, 53,404 (La. App. 2 Cir. 10/29/19). On appeal, the defendant claims in his *pro se* brief that the trial court's ruling violated his right to present a defense.

Based upon our review, we find that the trial court's reliance on the jurisprudence discussed *supra,* particularly the *Sullivan* case, was well founded. Similar to *Sullivan*, the failure of the defendant in the instant case to provide advance notice of the intent to assert the affirmative defense of voluntary intoxication would have been prejudicial to the state, which would have been prevented from preparing the evidence tending to prove that the defendant's level of intoxication did not preclude the presence of the specific intent necessary to commit second degree murder. As a result, the trial court properly refused to allow the defendant to assert the defense of voluntary

intoxication or give jury instructions on that defense.[5]  Accordingly, we find that this assignment of error is without merit.

## CONCLUSION

The defendant's conviction and sentence for attempted second degree murder are vacated, and the matter is remanded to the trial court for a new trial pursuant to *Ramos*, *supra*.  The defendant's convictions and sentences for second degree murder and illegal use of weapons or dangerous instrumentalities are affirmed.

**ATTEMPTED SECOND DEGREE MURDER CONVICTION AND SENTENCE VACATED, AND MATTER REMANDED FOR NEW TRIAL; CONVICTIONS AND SENTENCES FOR SECOND DEGREE MURDER AND ILLEGAL USE OF WEAPONS OR DANGEROUS INSTRUMENTALITIES AFFIRMED.**

---

[5] The defendant also claims that the trial court "failed to instruct the jury on the lesser-included offense of manslaughter."  This claim is baseless.  Our review of the record reveals that the jury was, in fact, instructed on manslaughter.